UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARITY CLAY | CIVIL ACTION |
| VERSUS | NO. 26-349 |
| XAVIER UNIVERSITY OF LOUISIANA | SECTION M (1) |

**ORDER & REASONS**

Before the Court is a second motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant Xavier University of Louisiana ("Xavier").[1] Plaintiff Charity Clay responds in opposition,[2] and Xavier replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion in part, dismissing only Clay's hostile-work-environment claim, and denies the motion as to Clay's other claims.

## I. BACKGROUND[4]

This is an action under Title VII and 42 U.S.C. § 1981 for sex- and race-based discrimination, hostile work environment, and retaliation.[5] Clay, an African-American female, worked at Xavier University in New Orleans, Louisiana, as an assistant professor in the sociology department and as the head of major concentration in crime and social justice.[6] She was hired sometime in or around 2018.[7]

---

[1] R. Doc. 21. Xavier first moved to dismiss plaintiff's original complaint, *see* R. Doc. 4, but plaintiff responded by filing an amended complaint, which mooted Xavier's first motion to dismiss. *See* R. Doc. 18.
[2] R. Doc. 26.
[3] R. Doc. 27.
[4] The facts in this section are taken solely from Clay's amended complaint.
[5] *See* R. Doc. 16 at 14-36.
[6] R. Doc. 16 at 3-4.
[7] *Id.* at 3.

As early as the fall of 2019, Clay experienced pressure from Dr. Amy Hite (a white female), then head of the sociology department, and Dean Sunda-Meya to assume the role of department chair during her time at Xavier prior to her tenure review.[8] However, Clay was informed that, under Hite's leadership, the sociology department had a history of denying tenure to black women – specifically, that three former black female faculty members on the tenure track left Xavier as a result of Hite's hostile treatment.[9] At a time unclear from the amended complaint, Clay communicated to Human Resources ("HR") her "concerns regarding the additional pressure placed on tenure-track African American women faculty members" and said that she remained focused on obtaining tenure, declining the department chair role.[10] After this communication, Clay began to notice changes in the behavior of Hite and others toward her, including Clay's removal from a grant project and decreased support and engagement from the sociology department leadership.[11] During Hite's final year as department head, Clay received a negative evaluation from her without the "usual classroom observation and evaluation procedures."[12] Hite then resigned as department head and became a member of the rank-and-tenure committee, prompting Clay to raise to Provost Giguette several concerns about the appointment, as she perceived Hite's position on the committee would present a conflict of interest in regard to Clay's tenure-review process.[13] Then, in September 2023, a student informed Clay that Hite had engaged in bullying behavior, which Clay reported to HR.[14]

---

[8] *Id*. at 4, 7. It is unclear whether the role of "department chair" is the same as the role of "department head," which terms Clay seems to use interchangeably.

[9] *Id*. at 4-5. Clay does not specifically allege that the three women were denied tenure.

[10] *Id*. at 7.

[11] *Id.*

[12] *Id.* at 8.

[13] *Id.*

[14] *Id.* at 9.

Before then, Clay had received reports from multiple students that Hite made racially insensitive comments, was defensive in discussions with students about racial issues, and dismissed student concerns.[15] Beginning in March 2022, Clay reported several complaints to HR on behalf of students regarding Hite's alleged racially insensitive conduct, and she additionally expressed concerns to HR regarding retaliation and a hostile work environment within the sociology department.[16] HR told her that the complaints would be documented and encouraged her to raise those issues with Dean Sunda-Meya.[17] However, Clay did not "observe" meaningful action by Xavier in response to her complaints.[18] In addition, several students informed Clay that they would prefer if she, rather than Hite, taught their sociology research methods course because of Hite's racially insensitive remarks during class, but that Hite accused Clay of questioning her credentials and attempting to take over the course when Clay suggested rotating the course assignment between them.[19] Students also informed Clay that Hite encouraged those of them who were dissatisfied with Clay's teaching to leave criticism in her course evaluations.[20]

In August 2023, Dr. Russell Frazier (a male political science professor) assumed the sociology department head role.[21] Clay was warned by colleagues that Frazier displayed hostility toward women in leadership.[22] Clay experienced frequent conflicts with Frazier about routine matters, which "similarly situated faculty members outside [her] protected class" did not experience.[23] Frazier made condescending comments to Clay, including that she was viewed as

---

[15] *Id.* at 5.
[16] *Id.* at 6, 19.
[17] *Id.* at 7. Clay does not describe Sunda-Meya's role at the university with any more specificity than "Dean."
[18] *Id.*
[19] *Id.* at 6.
[20] *Id.*
[21] *Id.* at 8.
[22] *Id.*
[23] *Id.* at 9.

the "savior" of the sociology department after increasing student enrollment.[24] Frazier also issued an "unfavorable" faculty assessment to Clay after an evaluation process that departed from the university's routine procedures and declined to support her tenure promotion.[25] Further, Clay was informed that Frazier repeatedly issued unwelcome invitations to a female colleague to socialize at work, and, then, after the female colleague declined his invitations, Frazier treated the colleague negatively.[26] Frazier also "ma[d]e negative comments in passing concerning women seeking attention."[27] At a time again unclear from the complaint, Clay informed the provost that Frazier's negative evaluation was neither accurate nor informed due to Frazier's limited interaction with Clay.[28] Clay complained to HR that Frazier's actions "created a hostile work environment and constituted harassment."[29] Also at a time unclear from the complaint, Clay requested mediation with Frazier and Hite to address teaching, collegiality, and departmental safety concerns, but Provost Giguette informed her that mediation was unnecessary.[30]

In December 2023, Xavier issued a formal denial of Clay's tenure "based on alleged unsatisfactory teaching and collegiality."[31] Xavier informed Clay that her collegiality was assessed primarily on the basis of Frazier's and Sunda-Meya's evaluations.[32] In the appeal of her tenure denial, Clay says she requested that Xavier consider nine letters from colleagues attesting to her collegiality, as is permitted by the faculty handbook, but that request was denied.[33] Further, during the appeal process, the rank-and-tenure committee referenced certain negative feedback

---

[24] *Id.*
[25] *Id*. at 10.
[26] *Id*. at 11.
[27] *Id.*
[28] *Id*. at 10.
[29] *Id*. at 11.
[30] *Id*. at 13.
[31] *Id*. at 11.
[32] *Id.*
[33] *Id*. at 11-13.

from students in prior classes, but did not acknowledge other students' positive feedback.[34] Clay alleges that she had not been informed during earlier stages of the tenure-track process that her teaching or collegiality was unsatisfactory.[35] Clay's direct and secondary appeals were denied.[36]

On July 10 or 12, 2024, Clay filed a charge of discrimination against Xavier with the Equal Employment Opportunity Commission ("EEOC").[37] She later filed this lawsuit on February 17, 2026, asserting several employment discrimination claims, including discrimination based on race, discrimination based on sex, and hostile work environment.[38] She filed an amended complaint on May 18, 2026.[39]

## II. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

---

[34] *Id.* at 12.
[35] *Id.*
[36] *Id.* at 13.
[37] *Id.* at 34. In her amended complaint, Clay submits that she filed her EEOC charge on July 12, 2024, *see id.*, but the EEOC charge itself is dated July 10, 2024. *See* R. Doc. 1-2.
[38] R. Doc. 1.
[39] R. Doc. 16.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th

Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

**B. Xavier's Timeliness Argument**

Xavier first notes that, in Louisiana, Title VII plaintiffs must file a charge of discrimination with the EEOC within 300 days of the discriminatory action.[40] It argues that the majority of Clay's factual allegations were not administratively exhausted because they occurred before the "charge period," that is, more than 300 days before Clay filed her EEOC charge.[41] Xavier says Clay acknowledges that certain of her factual allegations occurred outside of the charge period and admits that the adverse employment action underlying her claim is the December 2023 denial of tenure (which lies within the charge period).[42] Xavier thus urges the Court to dismiss all of Clay's claims that rely on factual allegations that occurred outside of the charge period, or before September 14, 2023.[43]

Clay responds that she has properly exhausted her administrative remedies, and that the allegations of fact occurring outside of the charge period are permissible background evidence of Xavier's discrimination and retaliation.[44] She maintains that the adverse employment action – Xavier's denial of tenure to her – occurred within the charge period and that, with respect to her hostile-work-environment claim, the "continuing violation doctrine" permits courts to consider conduct that occurred prior to the charge period if any act which contributed to the hostile environment occurred within the charge period.[45]

---

[40] R. Doc. 21-1 at 9.
[41] *Id.* at 9-11 (quoting R. Doc. 16 at 3). Xavier explains that 300 "days prior to July 10, 2024 [the date on the face of her EEOC charge], was September 14, 2023." *Id.* at 10.
[42] *Id.* at 11.
[43] *Id.*
[44] R. Doc. 26 at 3-4.
[45] *Id.* at 4-5.

Xavier replies that, although certain "untimely allegations" may be considered as background information, this principle does not save Clay's discrimination and retaliation claims.[46] It reiterates that Clay failed to allege any protected activity within the charge period, so her retaliation claim must be dismissed, and that her discrimination claim should be limited to the only alleged adverse action that occurred within the charge period – the denial of tenure.[47] Further, while not disagreeing that factual allegations beyond the charge period can be considered toward her hostile-work-environment claim, Xavier says that *none* of the hostile-work-environment factual allegations – besides the denial of tenure – can be considered in connection with Clay's hostile-work-environment claim.[48]

It is generally true that, in Louisiana, a Title VII plaintiff alleging discrimination must file a charge with the EEOC within 300 days of the complained-of employment action.[49] *Lavigne v. Cajun Deep Founds., L.L.C.*, 654 F. App'x 640, 643 (5th Cir. 2016). However, in hostile-work-environment claims, the "[continuing violation] doctrine provides that … 'as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is still timely, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability.'" *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 736 (5th Cir. 2017) (internal quotations marks omitted) (quoting *Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 289 (5th Cir. 2008)).

While hostile-work-environment claims are subject to the continuing violation doctrine, claims that allege discrete acts – like traditional discrimination claims – are not. *Heath*, 850 F.3d

[46] R. Doc. 27 at 2-3.
[47] *Id.*
[48] *Id.* at 3-4.
[49] Notably, § 1981 claims have no administrative exhaustion requirement but are subject to a four-year statute of limitations. *See Shaw v. Ciox Health, LLC*, 2020 WL 12846622, at *4 (E.D. La. July 8, 2020).

at 737. Nevertheless, in discrimination claims, discrete acts of discrimination that occurred more than 300 days before the plaintiff filed her EEOC charge "may still be considered as evidence of discriminatory intent" with respect to timely-filed claims based on later-occurring discrete discriminatory acts, even though such untimely acts may not serve as the adverse action underlying the suit. *Felton v. Polles*, 315 F.3d 470, 484-85 (5th Cir. 2002).

Assuming that Clay's EEOC charge was filed on July 10, 2024,[50] the 300-day window preceding her filing would begin on September 14, 2023.[51] Accordingly, only adverse actions taken on or after September 14, 2023, can be considered to form the basis of Clay's retaliation and discrimination claims. However, certain actions taken before September 14, 2023, may still be considered when determining whether Clay has plausibly alleged facts indicating Xavier's discriminatory intent. *Id.* As to Clay's hostile-work-environment claim, as long as one instance of employer conduct that Clay alleges created a hostile work environment occurred on or after September 14, 2023, the Court may consider whether the continuing violation doctrine makes relevant any of her allegations of hostile work environment before that date. *Heath*, 850 F.3d at 736. With the foregoing in mind, the Court analyzes the parties' arguments on each of Clay's specific claims.

**C. Discrimination Based on Sex and Race**

Title VII of the Civil Rights Act of 1964 "forbids employers from discriminating against an employee 'with respect to her compensation, terms, conditions, or privileges of employment, because of her race, color, religion, sex, or national origin.'" *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 648 (5th Cir. 2025) (alterations omitted) (quoting 42 U.S.C. § 2000e-2(a)(1)).

---

[50] Again, Clay contends that she filed her EEOC charge on July 12, 2024, *see* R. Doc. 16 at 34, although the charge attached to her original complaint shows that her EEOC charge is dated July 10, 2024. R. Doc. 1-2.

[51] Xavier, in its motion to dismiss, makes the same assumption. *See* R. Doc. 21-1 at 9-10.

Section 1981 also prohibits race-based discrimination, and "[s]ection 1981 claims are governed by the same standards as Title VII." *O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 420 (E.D. La. 2016). To state a claim for discrimination under Title VII (race and sex) or § 1981 (race), a plaintiff must allege "that she (1) belongs to a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside her protected group." *Shahrashoob*, at 649 (citing *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021)).

Intentional discrimination may be proved through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Clay does not allege any direct evidence of discrimination based on either sex or race in her complaint. When a Title VII (or § 1981) discrimination claim is based on circumstantial evidence, the three-part *McDonnell Douglas* burden-shifting framework applies. *EEOC v. Council for Advancement of Soc. Servs. & Educ.,* 753 F. Supp. 3d 507, 512 (W.D. La. 2024). However, at the Rule 12(b)(6) motion-to-dismiss stage, "a plaintiff is not required to produce the prima facie case for discrimination." *Id.* "Rather, at the pleading stage, plaintiff must plead sufficient facts on all the ultimate elements of a disparate treatment claim to make her case plausible." *Id.* (quotation and alterations omitted). Nevertheless, the *McDonnell Douglas* framework is a helpful reference for determining whether sufficient facts are pleaded, assuming that the plaintiff continues to rely on circumstantial evidence. *Id.*

**1. Race Discrimination (Title VII and § 1981)**

Xavier argues that Clay has not stated a claim for racial discrimination because she has not plausibly alleged that she was denied tenure because of her race, instead making only conclusory

assertions like "race was a motivating factor" in the decision and that Xavier's "Sociology Department had a history of not granting tenure to African American women during Dr. Hite's leadership."[52] Further, Xavier argues that Clay failed to plead the fourth *prima facie* element of race discrimination – namely, that she was replaced by a non-African-American professor, or that Hite or Chris Faircloth (another white faculty member within the sociology department) was similarly situated to her.[53] Xavier says that Clay's allegations are similar to those made in *Baker v. Administrators of Tulane Educational Fund*, 2025 WL 592780 (E.D. La. Feb. 24, 2025), and *Rakhshandeh v. Texas Tech University*, 2022 WL 1608637, (N.D. Tex. May 20, 2022), cases which were dismissed for insufficient allegations of comparators.[54]

In response, Clay emphasizes that she need not allege direct evidence of discrimination to support her claims.[55] She says that she has sufficiently alleged her race-discrimination claim, pointing to the specific African-American female faculty members she named who experienced adverse treatment; the comments of students to Clay that Hite made racially insensitive remarks to them; her complaints to HR about these comments; the allegations that the tenure process for Clay deviated from Xavier's ordinary procedures, suggesting discriminatory motive; allegations that comparators, Hite and Faircloth, were treated more favorably; and the allegation that Xavier's stated reasons for denying tenure are pretextual.[56] Specifically responding to Xavier's argument that she has not adequately alleged similarly situated comparators, Clay asserts that, at the motion-to-dismiss stage, it is sufficient that a plaintiff merely "identif[y] comparators by name and allege[] they were similarly situated in relevant respects," which she has done.[57] She says that her

---

[52] R. Doc. 21-1 at 13 (quoting R. Doc. 16 at 22, 24).
[53] *Id.* at 13-15.
[54] *Id.*
[55] R. Doc. 26 at 6.
[56] *Id.* at 5-8.
[57] *Id.* at 9.

allegations are distinguishable from those in *Baker* and *Rakhshandeh* because she alleges the existence of comparators with more specificity.[58] Finally, Clay states that Hite is a similarly situated comparator not as department head, but as a white woman who "received tenure at some point within the same department under the same general standards."[59]

Xavier, in reply, reiterates its contention that Clay's allegations regarding race discrimination are conclusory and insufficient. It asserts that Clay's admission that Hite was not head of the sociology department when Clay was denied tenure defeats her argument that the allegations of the sociology department's history of not granting tenure to African-American women during Hite's leadership make plausible her race-discrimination claim.[60] Xavier reasserts that Clay has not sufficiently alleged similarly situated comparators.

Neither of Xavier's arguments for dismissal of Clay's race-discrimination claims can prevail. First, Clay has adequately identified comparators by name – Hite and Faircloth – and alleged that they are similarly situated.[61] At the motion-to-dismiss stage, "a court errs by requiring a plaintiff to plead something more than the 'ultimate elements' of a claim." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). At this stage, then, a plaintiff need not rigorously detail the qualifications of a similarly situated employee or explain why the circumstances experienced by the alleged comparator were nearly identical to those precipitating the adverse action toward the plaintiff. *See id.* at 767-68. Instead, where a plaintiff adequately alleges that a comparator is similarly situated, analyzing the merits of such allegations is a task for the summary-judgment stage rather than on a motion to dismiss. *Id.* at 768.

---

[58] *Id.* at 9-10.
[59] *Id.* at 10.
[60] *Id.* at 4-5.
[61] *See* R. Doc. 16 at 23.

Second, Clay has sufficiently alleged that Xavier's denial of tenure was motivated by Clay's race. As this Court has explained, discrete acts of discrimination, even if they may not serve as the subject adverse employment action for the purposes of a Title VII or § 1981 claim because they were not administratively exhausted in a timely fashion, may still be used as evidence of discriminatory intent in regard to any timely-filed discrimination claims. *Felton*, 315 F.3d at 484. And, as Clay points out, she sufficiently alleges several of Xavier's actions that may tend to show Xavier's racially discriminatory intent. Although, as Xavier notes, Hite was no longer the sociology department head at the time Xavier denied tenure to Clay, Hite was a member of the rank-and-tenure committee at Xavier when Clay's tenure was denied, so, at the motion-to-dismiss stage, allegations pertaining to racial hostility in the sociology department under Hite's leadership are sufficiently relevant to Xavier's discriminatory intent in the denial of Clay's tenure as would support her position here that she plausibly pleaded discriminatory motive. Accordingly, Clay has adequately stated a claim of racial discrimination.

**2. Sex Discrimination (Title VII)**

Xavier also argues that Clay has not plausibly alleged that her sex was a motivating factor in Xavier's decision to deny her tenure.[62] According to Xavier, Clay asserts that Frazier was biased against women based only upon hearsay statements that he was demeaning to other women, which Xavier submits is irrelevant to whether Clay was discriminated against in any event.[63] Further, Xavier says that Clay's amended complaint points to perceived administrative deficiencies in the tenure process, but the complaint does not explain why these purported deficiencies may have been the result of sex discrimination.[64] Lastly, Xavier argues that Clay's complaint should be dismissed

[62] R. Doc. 21-1 at 15-17.
[63] *Id.* at 15.
[64] *Id.* at 16.

because she does not identify any male faculty members that were similarly situated and treated more favorably than she was.[65]

Clay, in response, points to the specific allegations she says plausibly state a sex-discrimination claim: reports of Frazier's history of bias against and harassment of women; Frazier's condescending treatment toward and hostile interactions with Clay; Frazier's evaluation of Clay without firsthand review of her teaching; and Clay's belief that Frazier was hostile toward women in leadership.[66] She then argues that Xavier's position that certain allegations should be discredited as hearsay or that they are evidence of Frazier's treatment of other female faculty members "conflate[s] the pleading standard with the evidentiary standard" and is inappropriately asserted at the motion-to-dismiss stage.[67] Finally, Clay asserts that her allegations of comparator and pretext evidence are adequate.[68]

In its reply, Xavier reiterates that allegations of Frazier's harassing conduct toward other women do not support Clay's claim of sex discrimination based on her own tenure denial, that Clay does not sufficiently allege that sex was a motivating factor in Xavier's decision to deny tenure, and that Clay has not pointed to a similarly situated male comparator.[69] As a result, Xavier re-urges that Clay's sex-discrimination claim should be dismissed.

The Court finds that, at this juncture at least, Clay has stated a claim for sex-based discrimination for similar reasons she has stated a race-based discrimination claim. Clay identifies several allegations in her complaint that, if proven, could tend to show Frazier's animus toward women in the workplace. And even though the alleged facts do not raise timely-exhausted adverse

---

[65] *Id.*
[66] R. Doc. 26 at 11-12.
[67] *Id.* at 12-13 (quote at 12).
[68] *Id.* at 13-14.
[69] R. Doc. 27 at 5-6.

employment actions, Clay indicates that she alleges them solely to provide background information. Thus, while Xavier notes that some of these allegations are only hearsay statements, the facts they address may still be relevant as background information and evidence of them may be obtained in admissible form during discovery. *See Dykes v. Maverick Motion Picture Grp.*, 2010 WL 11538359, at *5 (M.D. La. Sept. 8, 2010) ("The notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." (citing *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 396-97 (5th Cir. 2005))).

**D. Hostile Work Environment**

Title VII also "makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'" *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432 (5th Cir. 2022) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019)). The elements of a hostile-work-environment claim are that "(1) [the plaintiff] is a member of a protected class; (2) [s]he suffered unwelcomed harassment; (3) the harassment was based on [her] membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known' about the harassment and 'failed to take prompt remedial action.'" *Id.* at 433 (quoting *West v. City of Hous.*, 960 F.3d 736, 741 (5th Cir. 2020)). To show than an employer's harassment affected a term, condition, or privilege of the plaintiff's employment, the plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007) (alterations and quotation marks omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)).

Xavier argues that Clay fails to state a hostile-work-environment claim because she does not specifically allege any actions taken by Xavier that amount to harassment – only that she experienced a hostile work environment as a result of Hite's and Frazier's "racially insensitive treatment, bias against women in leadership, retaliatory evaluations, conflict-laden tenure review procedures, dismissal of supportive peer documentation, and refusal to mediate concerns."[70] And while Clay does allege specific actions that Hite and Frazier allegedly took toward others, Xavier says those allegations are insufficient to support a claim that Clay herself was subject to a hostile work environment.[71] Xavier further argues that Clay's hostile-work-environment claim should be dismissed because she fails to allege that Frazier's purported harassment of her was motivated by her race or gender.[72] Finally, Xavier contends that, even assuming that Clay sufficiently alleged harassment, she made no allegations that would show the harassment affected a term, condition, or privilege of her employment, as Frazier's 2023 negative evaluation was not administratively exhausted timely, and both the negative evaluation and the tenure denial were normal workplace tribulations.[73]

Clay responds with specific allegations from her amended complaint which she says plausibly state a hostile-work-environment claim: specifically, that she was pressured to assume the role of sociology department head before she obtained tenure; that she was retaliated against after declining the department-head position and reporting discrimination; that she received a negative evaluation from Hite without the evaluation, counseling, or notice that usually precedes an evaluation; that Hite was appointed to Xavier's rank-and-tenure committee and participated in Clay's tenure-review process despite being the subject of Clay's HR complaints; and that the

[70] R. Doc. 21-1 at 18-19 (quote at 19) (quoting R. Doc. 16 at 17).
[71] *Id.* at 19.
[72] *Id.* at 20.
[73] *Id.* at 20-21.

ultimate "denial of tenure follow[ed] a process infected by bias, procedural irregularities, and exclusion of favorable evidence."[74] Clay then submits that her allegations of Hite's and Frazier's harassment directed to others is relevant to her hostile-work-environment claim because it tends to establish the workplace atmosphere and the respective actor's discriminatory animus.[75] Next, Clay argues that the cumulative effect of the conduct she alleges "is a multi-year pattern of discriminatory and retaliatory conduct affecting the core terms of [her] employment."[76] Finally, Clay says that her allegation that Xavier appointed Hite to the rank-and-tenure committee and permitted her to participate in Clay's tenure process despite its knowledge of her HR complaints satisfies the fifth *prima facie* element (*i.e.,* employer knowledge and failure to take remedial action) of her hostile-work-environment claim.[77]

Xavier replies that the allegations to which Clay points in support of her argument that her hostile-work-environment claim was sufficiently alleged do not satisfy the plausible pleading standard set forth by *Iqbal* and *Twombly*.[78] Xavier also argues that Clay's claim that evidence of harassment to others can be relevant to her hostile-work-environment claim has no legal support.[79]

Clay has not stated a plausible claim for hostile work environment because she does not allege with specificity actions on the part of Xavier that, if proven, would constitute the sort of "severe or pervasive" conduct that is actionable in hostile-work-environment claims. Whether conduct is sufficiently severe or pervasive "depends on the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

---

[74] R. Doc. 26 at 15-16 (quote at 16).
[75] *Id.* at 16-17.
[76] *Id.* at 17.
[77] *Id.* at 17-18.
[78] R. Doc. 27 at 6-7.
[79] *Id.* at 7.

employee's work performance.'" *Sansone v. Jazz Casino Co.*, 2021 WL 3919249, at *3 (5th Cir. Sept. 1, 2021) (quoting *Harvill v. Westward Commc'n, LLC*, 433 F.3d 428, 434 (5th Cir. 2005)). Clay alleges only vaguely that she was pressured by Hite to become sociology department head; that she received a negative evaluation from Frazier, after he departed from typical protocol; that Hite, who she had reported for racially discriminatory conduct, participated in her tenure-review process; and that she was ultimately denied tenure. These general allegations of actions (including decisions about placement, evaluation, and tenure), which involve only "ordinary tribulations of the workplace," *see West,* 960 F.3d at 742, do not plead with specificity the sort of severe or pervasive conduct that constitutes a hostile work environment. *Cf. Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 398-400 (5th Cir. 2016) (holding that allegations of serious, but not sufficiently severe or pervasive, actions, whether considered individually or collectively, did not state a claim for hostile work environment). Nor does Clay state with any specificity the frequency of the conduct she alleges.

**E. Retaliation**

"Title VII protects an employee … from retaliation for complaining about the types of discrimination it prohibits." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020) (quotation omitted). "A Title VII retaliation plaintiff must establish that (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Fisher v. Lufkin Indus., Inc.,* 847 F.3d 752, 757 (5th Cir. 2017) (citing *Zamora v. City of Hou.*, 798 F.3d 326, 331 (5th Cir. 2015)). The *McDonnell Douglas* burden-shifting framework applies to Title VII retaliation claims. *Shrahrashoob*, 125 F.4th at 652 (citing *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022)).

Xavier argues that Clay's retaliation claim should be dismissed because Clay does not allege that she engaged in protected activity that could give rise to a retaliation claim.[80] Instead, says Xavier, Clay alleges she was retaliated against for her reports of alleged conduct toward students, or for the unfairness she perceived in the tenure process, neither of which is considered protected activity under Title VII.[81] In support of its position, Xavier cites to *Ellis v. Midwest Technical Institute, Inc.*, 2021 WL 3612279 (S.D. Miss. Aug. 13, 2021), in which the court dismissed the plaintiff's retaliation claim because the employee's purported "protected activity" consisted of complaints of discriminatory treatment toward students (and not employment practices), which Title VII does not protect against.[82] *Id.* at *2. Alternatively, Xavier contends that Clay has not sufficiently alleged causation between the reports she made to HR and her tenure denial.[83] Finally, Xavier submits that, to the extent Clay alleges retaliation on the basis of her actions during the tenure-review process, she cannot show that she was retaliated against because she was offered a contract to teach at Xavier again the following school year.[84]

In response, Clay asserts that she plausibly alleged protected activity under Title VII by claiming that, in March 2022, March 2023, and September 2023, she reported to HR racial discrimination, bullying behavior, fear of retaliation, retaliation and hostility in the tenure-review process, and concerns of heightened pressure on African-American women to obtain tenure.[85] She attempts to distinguish *Ellis*, explaining that, while the *Ellis* plaintiff complained only of discriminatory treatment of students based on race, Clay complained of "a departmental atmosphere of racial discrimination that affected faculty employment," including a history of

[80] R. Doc. 21-1 at 22-24.
[81] *Id.* at 23-24.
[82] *Id.* at 23.
[83] *Id.* at 24.
[84] *Id.* at 24-25.
[85] R. Doc. 26 at 19.

denying tenure to African-American women, heightened pressure on her as a result of her race and sex, and hostile treatment from the sociology department head.[86] She further argues that, even if her complaints to HR addressed only discrimination against students, an employee's student-only complaints still constitute protected activity where the employee is retaliated against.[87] Next, Clay contends that the causation element of her retaliation claim is sufficiently alleged insofar as she alleges temporal proximity between her March 2022, March 2023, and September 2023 complaints and her December 2023 tenure denial, as well as circumstantial evidence of, among other things, administrative irregularities in the tenure process.[88] Finally, Clay urges that Xavier's offering of an employment contract after denying tenure does not negate the adverse employment action of tenure denial or its retaliatory nature.[89]

In reply, Xavier argues that, because the alleged HR complaints that Clay says amount to protected activity were made before September 14, 2023, Clay's claim of retaliation as a result of those alleged complaints is untimely.[90] It reiterates its position that complaints concerning Xavier's tenure-review process are not protected activity, and it urges that Clay's allegations of other retaliatory conduct are too vague to support a claim.[91] Finally, Xavier submits that Clay's argument that temporal proximity between Clay's complaints and her tenure denial are sufficient to support an inference of causation for her retaliation claim fails as a matter of law.[92]

The Court finds that Clay has stated a plausible claim against Xavier for retaliation stemming from Clay's complaints in March 2022, March 2023, and September 2023. Clay sufficiently alleges that she engaged in protected activity (*i.e.*, complaints to HR), that she suffered

---

[86] *Id.* at 20.
[87] *Id.*
[88] *Id.* at 20-21.
[89] *Id.* at 21.
[90] R. Doc. 27 at 8.
[91] *Id.* at 8-9.
[92] *Id.* at 9.

an adverse employment action (*i.e.*, the denial of tenure), and that a causal link exists between Clay's protected activity and the adverse action. Specifically with respect to causation, Clay alleges that "[t]he evaluation irregularities [in Frazier's evaluation], conflicted decision-making process, exclusion of favorable documentation, and selective reliance on negative feedback demonstrate retaliatory motive."[93] Whether this can be proven remains to be seen, but the Court finds that Clay has adequately alleged causation such that her claim survives a motion to dismiss and may proceed to discovery.

Xavier's argument that Clay's complaints to HR concerned only Hite's racist conduct toward students, and thus did not amount to protected activity under Title VII, falls short because Clay also alleges that she complained to HR that Frazier's actions "created a hostile work environment and constituted harassment."[94] And, finally, in urging that Clay's retaliation claim is time-barred because her protected activity occurred more than 300 days before her EEOC charge, Xavier misapplies the governing law. Title VII's statute of limitations in Louisiana bars only those claims not administratively exhausted within 300 days of the *adverse employment action*, not the protected activity. *Lavigne*, 654 F. App'x at 643. Hence, Clay has plausibly stated a claim for retaliation against Xavier.

## III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Xavier's Rule 12(b)(6) motion to dismiss (R. Doc. 21) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Clay's hostile-work-environment claim is DISMISSED WITH PREJUDICE.

---

[93] R. Doc. 16 at 33.
[94] *Id.* at 11.

New Orleans, Louisiana, this 27th day of August, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE